UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JACQUELINE YOUNG,

                         Plaintiff,

        -against-

SOUTHWEST AIRLINES CO.,

                         Defendant.
----------------------------------------------------------------x

**MEMORANDUM OF
DECISION AND ORDER**
14-CV-1940 (LDH) (RLM)

L<small>A</small>SHANN D<small>E</small>ARCY HALL, United States District Judge:

Plaintiff Jacqueline Young brings this action for negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress claims against Defendant Southwest Airlines Company. Defendant moves pursuant to Federal Rule of Civil Procedure 56 for partial summary judgment and dismissal of Plaintiff's damages claims.[1] For the reasons stated herein, Defendant's motion is hereby granted.

## UNDISPUTED FACTS[2]

### I. The Hard Landing

On July 22, 2013, Plaintiff was a passenger on Southwest Airlines Flight 345. (*See* Pl.'s 56.1 Statement ¶¶ 1-2, ECF No. 44-28.) Upon arrival at LaGuardia Airport, the plane experienced what the parties have described as a "hard landing." (*Id.* ¶ 1.) According to Plaintiff, the plane landed "out of control," "nose first," and "careened down the runway." (Opp'n 1-2, ECF No. 44-29.) In any event, following the July 22, 2013 incident, Plaintiff

---

[1] Defendant also seeks an order from the Court precluding Plaintiff from offering any expert testimony at the time of trial. (Def.'s Mot. Summ. J. 1, ECF No. 44-25.) This request is denied as premature. Defendant may, however, file a motion *in limine* addressing this issue in the timeframe set forth in the Court's Individual Practices or on a date set by the Court.

[2] The foregoing facts are undisputed unless otherwise noted.

1

claimed injuries resulting in pain to her left shoulder, lower back and/or hip,[3] and neck, as well as headaches, hearing loss, and nausea. (Pl.'s 56.1 Statement ¶¶ 2, 30; Crowley Decl. Ex. A, at 47:15-23, ECF No. 44-2; Crowley Decl. Ex. E, at 3, ECF No. 44-6.) There is no evidence in the record indicating that Plaintiff sought immediate medical attention following the incident. However, approximately one week later, Plaintiff underwent x-rays, which indicated "early degenerative disk disease" but showed no fractures. (Crowley Decl. Ex. R, ECF No. 44-19.)

Plaintiff instituted this action in Queens County Supreme Court on August 2, 2013. (Notice of Removal, ECF No. 1.)[4] In her Complaint, Plaintiff alleges that as a result of Defendant's actions she was "severely injured, bruised, and wounded, suffered, still suffers, and will continue to suffer for some time great physical pain and great bodily injuries and became sick, sore, lame and disabled and so remained for a considerable length of time." (Compl. ¶ 23, ECF No. 1.)

## II. Plaintiff's Prior Medical History

Plaintiff has been classified as disabled for over sixteen years. (*See* Pl.'s 56.1 Statement ¶ 15.) Indeed, Plaintiff has been involved in a series of accidents and has suffered from numerous medical conditions that predate the July 2013 incident. In 2000, Plaintiff fell from a catwalk, injuring both of her knees and her left shoulder. (*Id.*) Since at least 2001, Plaintiff has complained of neck pain, persistent back pain, and headaches due to chronic medical conditions, including hypertension and anemia. (*Id.* ¶¶ 16-18.) In 2001, Plaintiff was diagnosed with uterine fibroids, which can potentially cause hip pain.[5] (*Id.* ¶¶ 25-26.) In May 2003, Plaintiff

---

[3] Plaintiff has stated that what she refers to as her "hip," her doctors referred to as her "lower back." (Pl.'s 56.1 Statement ¶ 11.)
[4] The action was removed to this Court on March 26, 2014. (*See* Notice of Removal.)
[5] In addition to these physical ailments, in 2001, Plaintiff was diagnosed with depression and anxiety. (Pl.'s 56.1 Statement ¶ 21.)

2

was involved in a motor vehicle accident. (*Id.* ¶ 23.) As a result of that accident, Plaintiff again complained of neck pain as well as pain to the right side of her back. (*Id.*) In April 2004, Plaintiff sought medical attention for neck pain. (*Id.* ¶ 24.) In 2010, Plaintiff was involved in a trip and fall accident in which she injured her neck, thoracic spine, and lower back. (*Id.* ¶ 28.)

Just four months before the July 2013 incident, on March 15, 2013, Plaintiff slipped and fell in a Walmart store. (*Id.* ¶ 4.) As a result of that accident, Plaintiff claimed to have sustained injuries that resulted in pain to her shoulder, back, and hip. (*Id.* ¶ 5.) Subsequent to the fall, Plaintiff also complained of a headache. (*Id.* ¶ 20.) In April 2013, Plaintiff reported left hip pain and stiffness that permeated down her pelvic region and thigh. (*See id.* ¶ 27.) On June 4, 2013, Plaintiff underwent her first of at least two MRIs in connection with the injuries she sustained from the fall at Walmart. (*See id.* ¶¶ 13, 33.) That MRI showed "[m]ild degenerative spondylosis without significant spinal or neuroforaminal compromise." (Crowley Decl. Ex. G, at 2, ECF No. 44-8.) A second MRI on August 1, 2013, identified "[n]o definite etiology of left hip pain," but it did reveal a "[l]arge fibroid within the uterus."[6] (*See* Pl.'s 56.1 Statement ¶ 33; Crowley Decl. Ex. S, at 2, ECF No. 44-20.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. At summary judgment, the movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*,

---

[6] A third MRI, in January 2014, revealed "[d]isc degenerative changes and posterior facet arthropathy" and "an enlarged, probably fibroid uterus." (Pl.'s 56.1 Statement ¶ 34; Crowley Decl. Ex. H, at 3, ECF No. 44-9.)

477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movant's initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325.

Once the movant meets that burden, the non-movant may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 248; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The court is to view all such facts in the light most favorable to the non-movant, drawing all justifiable inferences in her favor. *Anderson*, 477 U.S. at 255. To survive summary judgment, a non-movant must present concrete evidence and rely on more than conclusory or speculative claims. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). If the admissible evidence is insufficient to permit a rational juror to find in favor of the non-movant, the court may grant summary judgment. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002).

**DISCUSSION**

**I.  Negligence Claim**

Under New York law, a plaintiff claiming negligence may recover only for those damages proximately caused by a defendant's breach of care. *Johnson v. Bryco Arms*, 304 F. Supp. 2d 383, 394 (E.D.N.Y. 2004) (citing *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981)). Defendant maintains that summary judgment is warranted in this case because even if Plaintiff could prove that Defendant breached its duty of care—resulting in the hard landing— no reasonable jury could find that the hard landing caused or exacerbated Plaintiff's claimed injuries. (Def.'s Mot. Summ. J. 10-11, ECF No. 44-25.) Significantly, Plaintiff has failed to put

4

forth any expert testimony relating to her various alleged injuries.[7] By failing to provide such testimony, Defendant argues, Plaintiff is foreclosed from pressing claims for her alleged injuries before a jury. (*Id.* at 11-12.) The Court agrees, in part.

"[T]he medical effect on the human system of the infliction of injuries is not generally within the sphere of the common knowledge of the lay person." *Barnes v. Anderson*, 202 F.3d 150, 159 (2d Cir. 1999) (quoting *Collette v. Collette*, 418 A.2d 891, 894 (Conn. 1979)). As such, "expert testimony usually is necessary to establish a causal connection between an injury and its source . . . ." *Tufariello v. Long Island R. Co.*, 458 F.3d 80, 89 (2d Cir. 2006); *see also Meiselman v. Crown Heights Hospital*, 285 N.Y. 389, 396 (1941) ("Ordinarily, expert medical opinion evidence . . . is required, when the subject-matter to be inquired about is presumed not to be within common knowledge and experience . . . ."). This is particularly true in cases like this one, where a plaintiff's injuries have "multiple potential etiologies." *See Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004); *see also, e.g.*, *Barnes*, 202 F.3d at 160 (plaintiff's miscarriage was the sort of "complex injury" for which expert medical evidence of causation was required, given uncertain timing of beginning and ending of plaintiff's pregnancy and physical assault of plaintiff by others that occurred subsequent to arrest but possibly prior to miscarriage); *Glowczenski v. Taser Int'l, Inc.*, 928 F. Supp. 2d 564, 584-85 (E.D.N.Y. 2013) (granting summary judgment where court found that no lay juror could "wade through various possible

---

[7] Plaintiff's failure to put forth expert testimony is inexcusable in this case. By motion dated April 25, 2016, Plaintiff requested that the Court reopen expert discovery. (ECF No. 51). The Court granted Plaintiff's motion, taking into account her limited resources and the possibility that she did not fully appreciate the significance or mechanics of expert discovery. (May 4, 2016 Order, ECF No. 54.) On May 19, 2016, Plaintiff was directed to provide Defendant with authorizations as to her medical releases by June 2, 2016. (*See* May 19, 2016 Order.) Plaintiff failed to do so. (*See* June 28, 2016 Order.) By Order dated June 23, 2016, the Court again directed Plaintiff to provide Defendant with said authorizations. (*See* June 23, 2016 Order.) Plaintiff was specifically warned that if she failed to comply, the Court would vacate its May 4, 2016 Order granting Plaintiff's motion to reopen expert discovery. (*Id.*) Plaintiff nonetheless failed to provide the authorizations. (*See* June 28, 2016 Order.) Accordingly, the Court vacated its Order and closed expert discovery. (*See id.*)

causes [of stun-gun death] and reasonably pick one"). In *Jimenez v. Supermarket Serv. Corp.*, for example, the plaintiff alleged injuries to her neck and back resulting from a car accident. No. 01-cv-3273, 2002 WL 662135, at *1 (S.D.N.Y. Apr. 22, 2002). The *Jimenez* court found that the jury required the aid of expert testimony to decide whether the car accident caused the plaintiff's injuries, because the plaintiff had already claimed neck and back injuries from a previous fall, had been declared disabled, and had been diagnosed as requiring back surgery before the accident at issue. *Id.* at *4. The instant case is not unlike *Jimenez* and warrants the same outcome.

Here, Plaintiff claims that she has suffered migraines, hearing loss, nausea, and left shoulder, lower back, neck, and hip pain resulting from the hard landing. (Pl.'s 56.1 Statement ¶¶ 2, 30; Crowley Decl. Ex. A, at 47:15-23; Crowley Decl. Ex. E, at 3.) Complicating Plaintiff's claim, however, is Plaintiff's long history of similar medical ailments that predate the accident at issue here. It is undisputed that Plaintiff injured her shoulder twice before the accident—once in the fall from a catwalk and once in a 2013 fall at a Walmart store. (Pl.'s 56.1 Statement ¶¶ 4-6, 15.) It is undisputed that Plaintiff has complained of back pain as far back as at least 2001 and that she claims to have further sustained injuries to her back in a 2003 car accident and her 2013 Walmart fall. (*Id.* ¶¶ 4-6, 23-24.) Likewise, it is undisputed that Plaintiff has made complaints of neck pain since 2001 and that she claims to have injured her neck in her 2003 car accident. (*Id.* ¶¶ 16, 23-24.) It is also undisputed that Plaintiff suffers from several ongoing medical conditions, which may be the causes of her headaches, neck pain, and hip pain. (*Id.* ¶¶ 18, 25-26.)

Given the complexity of Plaintiff's overlapping injuries and medical history, the Court finds that there is simply no way a jury could reasonably conclude, without the aid of expert

testimony, that these claimed injuries were caused or exacerbated by Defendant's alleged negligence.[8]  Accordingly, Defendant's motion for summary judgment as to these claimed injuries is granted.

Of course, expert testimony is not required where the jury must draw only a common sense causal connection between a plaintiff's injury and one precipitating cause.  For example, an expert is not necessary for a jury to determine whether very loud sounds could have caused hearing loss, *see Tufariello*, 458 F.3d at 88, whether paint fumes could have caused dizziness, *see Ulfik v. Metro-N. Commuter R.R.*, 77 F.3d 54, 59-60 (2d Cir. 1996), or whether a car accident could have caused a knee fracture, *see Lanpont v. Savvas Cab Corp.*, 664 N.Y.S.2d 285, 288 (1st Dep't 1997).  Here, amidst her complicated medical claims, Plaintiff also alleges the sort of injures that a lay juror could easily assess—particularly allegations of bruises and abrasions from hitting her head against the seat in front of her or falling at the bottom of the exit slide.  (*See* Crowley Decl. Ex. A, at 41:2-4, 41:7-9, 41:20-25.)  For these type of alleged injuries, Plaintiff's failure to provide expert testimony is not fatal.  But Plaintiff's negligence claim is hereby limited to only this category of causally uncomplicated injuries.

## II. Intentional and Negligent Infliction of Emotional Distress Claims[9]

Under New York law, claims for intentional infliction of emotional distress ("IIED") require a plaintiff to demonstrate, among other things, that the defendant engaged in "extreme and outrageous conduct."  *See Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121, 612

---

[8] The only claimed injury which the record does not immediately make clear could have potentially been caused by an earlier accident or condition is Plaintiff's alleged nausea.  However, the Court finds that the determination of the cause of such an injury is far too technical for a jury without the aid of an expert.  *See, e.g.*, *Wills*, 379 F.3d at 46 (expert testimony necessary to establish causal link between toxins emitted from defendants' vessels and decedent's cancer); *Watson v. Long Island R. Co.*, 500 F. Supp. 2d 266, 272 (S.D.N.Y. 2007) (question of whether a uniform hat caused plaintiff's skin condition was a technical issue that required expert testimony).  For that reason, the Court grants summary judgment to the extent Plaintiff's negligence claim is premised upon her claimed nausea.
[9] Plaintiff's IIED, NIED, and punitive damages claim were dismissed during a May 19, 2016 hearing with opinion to follow.  (May 19, 2016 Min. Entry & Scheduling Order.)

7

N.E.2d 699, 702 (1993). A plaintiff claiming negligent infliction of emotional distress ("NIED") must make that same showing. *See Romero v. City of N.Y.*, 839 F. Supp. 2d 588, 631 (E.D.N.Y. 2012). Indeed, the requirement of extreme and outrageous conduct in the NIED context is equivalent to that for IIED. *See Regeda v. City of New York*, No. 09-cv-5427, 2012 WL 7157703, at *12 (E.D.N.Y. Sept. 7, 2012) ("The elements of a claim for intentional infliction of emotional distress are nearly identical to a claim for negligent infliction of emotional distress. The intentional infliction of emotional distress claim differs only in that it includes the element of intent to cause emotional distress."). Thus, for both claims, a plaintiff satisfies her burden to show extreme and outrageous conduct only when she adduces evidence that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Vumbaca v. Terminal One Grp. Ass'n L.P.*, 859 F. Supp. 2d 343, 377 (E.D.N.Y. 2012) (quoting *Howell*, 612 N.E.2d at 702).

Here, Defendant maintains that the unintentional hard landing does not meet the required standard for extreme and outrageous conduct and that Plaintiff has offered no evidence to indicate otherwise. (Def.'s Mot. Summ. J. 14-15.) Plaintiff's four-sentence response in opposition consists only of conclusory statements wholly unsupported by fact. (*See* Opp'n 5.) Plaintiff has offered no evidence as to any intentional conduct on behalf of Defendant or on the part of Defendant's agents or employees. Plaintiff has similarly pointed to no evidence in the record suggesting that Defendant's conduct was extreme or outrageous. Even if Plaintiff could surmount the high hurdle of characterizing Defendant's conduct as such, Plaintiff has made no showing to substantiate Plaintiff's alleged emotional injuries. *See Greenaway v. Cty. of Nassau*, 97 F. Supp. 3d 225, 240 (E.D.N.Y. 2015) (granting summary judgment on plaintiff's IIED claim

8

where no medical evidence supported claim); *Samtani v. Cherukuri*, No. 11-cv-2159, 2015 WL 64671, at *16 (E.D.N.Y. Jan. 5, 2015) (finding that IIED claim required medical evidence to withstand summary judgment motion); *Walentas v. Johnes*, 683 N.Y.S.2d 56, 58 (1st Dep't 1999) (plaintiff's claim of severe emotional distress "must be supported by medical evidence, not the mere recitation of speculative claims"). Accordingly, Plaintiff's IIED and NIED claims cannot succeed, and Defendant's motion for summary judgment is granted as to these claims.

### III. Punitive Damages Claim

New York does not recognize an independent cause of action for punitive damages. *See Martin v. Dickson*, 100 F. App'x 14, 16 (2d Cir. 2004) (citing *Paisley v. Coin Device Corp.*, 773 N.Y.S.2d 582, 583 (2d Dep't 2004)). Accordingly, Defendant's motion for summary judgment as to Plaintiff's punitive damages claim is granted.[10]

## CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment is hereby granted, in part, and denied, in part. Defendant's motion is granted as to Plaintiff's intentional and negligent infliction of emotional distress claims and punitive damages claim. Defendant's motion is granted as to Plaintiff's negligence claim, in part, as it pertains to any claimed injuries that require expert testimony to establish causation. Plaintiff is permitted to pursue the remainder of her negligence claim with respect to any claimed injuries that a jury could find resulted from Defendant's negligent conduct without the aid of an expert.

---

[10] Even if Plaintiff had pleaded punitive damages properly, the Court does not find any evidence in the record to suggest that Defendant's conduct could permit an award of punitive damages under New York law. *See generally Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 489, 868 N.E.2d 189, 196 (2007) ("Punitive damages are permitted when the defendant's wrongdoing is not simply intentional but 'evince[s] a high degree of moral turpitude and demonstrate[s] such wanton dishonesty as to imply a criminal indifference to civil obligations.' . . . The misconduct must be exceptional, 'as when the wrongdoer has acted maliciously, wantonly, or with a recklessness that betokens an improper motive or vindictiveness . . . or has engaged in outrageous or oppressive intentional misconduct or with reckless or wanton disregard of safety or rights.'" (citations omitted)).

Dated: Brooklyn, New York
February 3, 2017

SO ORDERED:

/s/LDH

LaSHANN DeARCY HALL
United States District Judge